# **EXHIBIT 8**

## UNIT PURCHASE AGREEMENT

THIS UNIT PURCHASE AGREEMENT (this "Agreement") is made as of December 21th, 2017 among Concord Blue Patent GmbH, a German GmbH ("Concord Blue Patent"), CT Power GmbH, a German GmbH ("Seller"), Municipal Employees' Retirement Systems of Michigan ("Buyer 1"), Ms. Gaia Arnaboldi ("Buyer 2") and Mr. Berry Polmann ("Buyer 3").

Buyer 1, 2 and 3 are jointly also referred to as the "Buyers" or individually a "Buyer".

### BACKGROUND

Seller desires to sell to Buyers, and Buyers desire to purchase from Seller, a total $12,886,000 (30 %) of the equity interests of Concord Blue Patent pursuant to the terms of this Agreement, and Concord Blue Patent desires such transaction to occur between Buyers and Seller.

NOW THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, Concord Blue Patent, Seller and Buyers agree as follows:

### AGREEMENT

The parties hereby agree as follows:

1.  Sale of Purchased Units.

    (a)  General.  At the Closing,

    (i)  Seller shall sell, and Buyer 1 shall purchase, 25 % of the equity interests of Concord Blue Patent (the "Purchased Units 1") at a purchase price of 12,885,998 USD (the "Purchase Price 1"); and

    (ii)  Seller shall sell, and Buyer 2 shall purchase, 2.5 % of the equity interests of Concord Blue Patent (the "Purchased Units 2") at a purchase price of 1 USD (the "Purchase Price 2"); and

    (iii)  Seller shall sell, and Buyer 3 shall purchase, 2.5 % of the equity interests of Concord Blue Patent (the "Purchased Units 3") at a purchase price of 1 USD (the "Purchase Price 3").

Purchased Units 1, 2 and 3 above are totalized referred to as "Purchased Units" and Purchase Price 1, 2 and 3 above are totalized referred to as "Purchase Price".

Buyers acknowledge that the Purchased Units are subject to the rights, limitations and restrictions set forth in that certain Shareholder's Agreement, dated as of 8th August 2012, which is attached hereto as Appendix 1 (the "*Gesellschaftsvertrag*").

1

(b) <u>Deliveries by Buyers at the Closing</u>. At the Closing, Buyers will deliver to Seller

(A) a fully executed counterpart signature page to this Unit Purchase Agreement, dated as of December 22nd 2017, between Buyers and Seller (the "<u>Unit Purchase Agreement</u>"); and

(B) the Purchase Price shall fall due upon the occurrence of each of the following conditions precedent:

    i.    The Shareholders' Meeting of Concord Blue Patent adopts an amendment of the Articles of Association as attached hereto as <u>Appendix 2</u> and resolves the Rules of Procedure for the Management as attached hereto as <u>Appendix 3</u>.

    ii.    A Shareholder Agreement as attached hereto as <u>Appendix 4</u> is signed by Seller and Buyer 1 und by Seller and Buyer 1 and 2.

The Purchase Price has to be paid by wire transfer to the bank account designated by Seller immediately.

<u>Deliveries by Seller at the Closing</u>. At the Closing, Seller shall

(A) deliver to Buyers a fully executed counterpart signature page to the Unit Purchase Agreement and

(c) <u>Uncertificated Units</u>. The parties acknowledge that the Units of Concord Blue Patent are not certificated and none of the Purchased Units shall be certificated.

(d) <u>Closing</u>. The purchase of the Purchased Units, the payment of the Purchase Price and the other transactions contemplated by this Agreement shall take place on December 22, 2017 (the "<u>Closing</u>").

2. <u>Buy back option</u>. The seller owns the right to buy back shares from Buyer 1 at the same price as the shares were purchased for as per following formula:

Buy back formula - Purchase Agreement between CT Power, Mers, Gaia Arnaboldi and Berry Polmann

| USD | % | EUR | EUR per 1% | Valuation | |
|---|---|---|---|---|---|
| $ 12.886.000,00 | 25,00 | € 10.809.670,41 | € 432.386,82 | € 43.238.681,64 | CBE |

€ 10.809.670,00

| Investment | Year | | CBP Profit | | Valuation | Equity | | IRR of Valuat. | Annual Cash Out Mers | Annual IRR yr 5 & on Mers |
|---|---|---|---|---|---|---|---|---|---|---|
| 10.809.670,00 € | 5 | 20% | € 7.300.000,00 | 10 | € 73.000.000,00 | 22,50% | € 16.425.000,00 | 37,99% | € 1.642.500,00 | 15,19% |
| 10.809.670,00 € | 5 and on | | € 10.000.000,00 | 10 | € 100.000.000,00 | 20,00% | € 20.000.000,00 | 46,25% | € 2.000.000,00 | 18,50% |
| 10.809.670,00 € | | | € 13.000.000,00 | 10 | € 130.000.000,00 | 17,50% | € 22.750.000,00 | 52,61% | € 2.275.000,00 | 21,05% |
| 10.809.670,00 € | | | € 16.000.000,00 | 10 | € 160.000.000,00 | 15,00% | € 24.000.000,00 | 55,51% | € 2.400.000,00 | 22,20% |
| 10.809.670,00 € | | | € 20.000.000,00 | 10 | € 200.000.000,00 | 12,50% | € 25.000.000,00 | 57,82% | € 2.500.000,00 | 23,13% |
| 10.809.670,00 € | | | € 26.000.000,00 | 10 | € 260.000.000,00 | 10,00% | € 26.000.000,00 | 60,13% | € 2.600.000,00 | 24,05% |
| 10.809.670,00 € | | | € 40.000.000,00 | 10 | € 400.000.000,00 | 7,50% | € 30.000.000,00 | 69,38% | € 3.000.000,00 | 27,75% |
| 10.809.670,00 € | | | € 65.000.000,00 | 10 | € 650.000.000,00 | 5,00% | € 32.500.000,00 | 75,16% | € 3.250.000,00 | 30,07% |

All Parties agree to execute a separate buy back option contract before 28th of February 2018

2   C. TL 

accordingly.

3. <u>Representations and Warranties of Seller</u>. Seller hereby represents and warrants to Buyers that as of the Closing:

(a) <u>Corporate Status</u>. Seller is a GmbH, duly organized, validly existing and in good standing under the laws of Germany.

(b) <u>Power and Authority; Authorization and Enforceability</u>. Seller has the requisite power and authority to execute, deliver and perform Seller's obligations under this Agreement and any other document, agreement or instrument entered into in connection with this Agreement (this Agreement, together with any such documents, agreements or instruments, collectively, the "<u>Transaction Documents</u>") that is required to be executed or performed by Seller. This Agreement has been duly executed and delivered by Seller and, subject to the execution hereof by Concord Blue Patent and Buyers, constitutes a valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, moratorium or other similar laws affecting or relating to creditors' rights generally, or general principles of equity.

(c) <u>No Conflict; Consents</u>. Except for actions and consents contemplated by the *Gesellschaftsvertrag*, the execution and delivery of this Agreement does not, and the consummation of the transactions contemplated by this Agreement and compliance with the provisions of this Agreement will not, conflict with, or result in any violation of or default (with or without notice or lapse of time or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a benefit or require any consent, approval, authorization or notice under, or result in the creation of any liens in or upon any of the assets of Seller under any provision of (i) any material agreement, contract, lease, license, instrument, or other arrangement to which Seller is a party or by which Seller is bound or to which any of Seller's assets (including the Purchased Units) is subject; or (ii) any statute, law, ordinance, rule or regulation, or any judgment, order or decree, in each case, applicable to Seller or its assets (including the Purchased Units). Except for actions and consents contemplated by the *Gesellschaftsvertrag*, no consent, approval, order or authorization of, or registration, declaration or filing with any government authority is required by or with respect to Seller in connection with the execution and delivery of this Agreement by Seller or the consummation by Seller of the transactions contemplated by this Agreement.

(d) <u>Brokers</u>. Seller does not have any contract, arrangement or understanding with any broker, finder or similar agent with respect to the transactions contemplated by this Agreement.

(e) <u>Purchased Units</u>. Immediately prior to the consummation of the transactions contemplated by this Agreement, Seller holds of record and beneficially owns all of the Purchased Units, free and clear of any claim, lien, pledge, assignment, charge, easement, security interest, right-of-way, encumbrance, mortgage or other right, including any preemptive right, right of first refusal, option, put, call or other restriction on transfer (other than restrictions imposed by securities laws) (collectively, "<u>Liens</u>"). Upon the delivery of and payment of the Purchase Price for the Purchased Units at the Closing as provided in this Agreement, Seller will

3 

transfer to Buyers good and valid title to the Purchased Units, free and clear of any Lien. The Purchased Units constitute a 25 % ownership interest in all of the Units of Concord Blue Patent, on a fully-diluted basis.

4.  Representations and Warranties of Concord Blue Patent. Concord Blue Patent hereby represents and warrants to Buyers that as of the Closing:

(a) Corporate Status. Concord Blue Patent is a German GmbH, duly organized, validly existing and in good standing under the laws of Germany and has requisite power and authority to own, lease and operate its properties and assets and to carry on its business as presently conducted.

(b) Power and Authority; Authorization and Enforceability. Concord Blue Patent has the requisite power and authority to execute, deliver and perform its obligations under this Agreement and any other document, agreement or instrument entered into in connection with this Agreement or any other Transaction Document that is required to be executed or performed by Concord Blue Patent. This Agreement has been duly executed and delivered by Concord Blue Patent and, subject to the execution hereof by Seller and Buyers, constitutes a valid and binding obligation of Concord Blue Patent, enforceable against Concord Blue Patent in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, moratorium or other similar laws affecting or relating to creditors' rights generally, or general principles of equity.

(c) No Conflict; Consents. Except for actions and consents contemplated by the *Gesellschaftsvertrag*, the execution and delivery of this Agreement does not, and the consummation of the transactions contemplated by this Agreement and compliance with the provisions of this Agreement will not, conflict with, or result in any violation of or default (with or without notice or lapse of time or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a benefit or require any consent, approval, authorization or notice under, or result in the creation of any liens in or upon any of the assets of Concord Blue Patent under any provision of (i) any material agreement, contract, lease, license, instrument, or other arrangement to which Concord Blue Patent is a party or by which Concord Blue Patent is bound or to which any of Concord Blue Patent's assets (including the Purchased Units) is subject; or (ii) any statute, law, ordinance, rule or regulation, or any judgment, order or decree, in each case, applicable to Concord Blue Patent or its assets (including the Purchased Units). Except for actions and consents contemplated by the *Gesellschaftsvertrag*, no consent, approval, order or authorization of, or registration, declaration or filing with any government authority is required by or with respect to Concord Blue Patent in connection with the execution and delivery of this Agreement by Concord Blue Patent or the consummation by Concord Blue Patent of the transactions contemplated by this Agreement.

(d) Brokers. Concord Blue Patent does not have any contract, arrangement or understanding with any broker, finder or similar agent with respect to the transactions contemplated by this Agreement.

(e) Purchased Units. The Purchased Units constitute a 25 % ownership interest in all of the Units of Concord Blue Patent, on a fully-diluted basis.

4

5.  **Representations and Warranties of Seller and Concord Blue Patent.** Each of Seller and Concord Blue Patent hereby represents and warrants, jointly and severally, to Buyers that as of the Closing:

    (a)  **Agreements with Respect to Purchased Units.** As of the Closing, there will be no (i) pre-emptive or similar rights on the part of any holders of any class of securities of Concord Blue Patent, or restrictions on transfer, repurchase options or rights of first refusal with respect to any class of securities of Concord Blue Patent; (ii) outstanding subscriptions, options, warrants, conversion, exchange or other rights, agreements or commitments of any kind obligating Concord Blue Patent to issue or sell, or cause to be issued and sold, any equity or any securities convertible into or exchangeable for any such equity; (iii) stockholder or other agreements or voting trusts to which Concord Blue Patent is a party relating to the voting, purchase, redemption or other acquisition of any Units or other equity of Concord Blue Patent; (iv) outstanding stock appreciation rights, phantom stock, profit participation or other similar rights with respect to the Units or other equity of Concord Blue Patent or (v) outstanding dividends or distributions, whether current or accumulated, due or payable on any of the Units or other equity of Concord Blue Patent.

    (b)  **License Fees; Royalties.** Concord Blue Patent is entitled to the license fees and royalties that are paid to it with respect to the Assets.

    (c)  **Litigation.** There is no judicial or administrative action, claim, suit or proceeding pending or threatened against Concord Blue Patent or Seller, and to each of Concord Blue Patent's knowledge or Seller's knowledge there is no investigation pending or threatened against Concord Blue Patent or Seller, in each case, before any governmental entity.

6.  **Representations and Warranties of Buyer 1.** Buyer 1 hereby represents and warrants to Seller that as of the Closing:

    (a)  **Corporate Status.** Buyer 1 is a Michigan company, duly organized, validly existing and in good standing under the laws of the State of Michigan.

    (b)  **Power and Authority; Authorization.** Buyer 1 has the requisite power and authority to execute, deliver and perform its obligations under this Agreement and any other document, agreement or instrument entered into in connection with this Agreement or any other Transaction Document that is required to be executed or performed by Buyer 1. The execution, delivery and performance of this Agreement by Buyer 1 and the consummation of the transactions contemplated hereby by Buyer 1 have been duly authorized by all necessary action on the part of Buyer 1 and no other proceedings on the part of Buyer 1 are necessary to authorize this Agreement or to consummate the transactions contemplated hereby.

7.  **Representations and Warranties of Buyers.** Each Buyer hereby individually represents and warrants to Seller that as of the Closing:

    (a)  **Enforceability.** This Agreement has been duly executed and delivered by Buyer and, subject to the execution hereof by Seller and Concord Blue Patent, constitutes a valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, moratorium or other similar laws affecting or relating to creditors' rights generally, or general principles of equity.

5

(b)     Restricted Securities; Limitations on Resale; Investment Representations. By execution of this Agreement, Buyer hereby (A) confirms that the Purchased Units are being acquired for investment for Buyer's own account and not as a nominee or agent and not with a view to the resale or distribution of any part thereof, and that Buyer has no present intention of selling, granting any participation in or otherwise distributing the same; (B) represents and warrants that Buyer does not have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant participation to such person or to any third person in or to, any of the Purchased Units; (C) represents and warrants that it is a sophisticated investor and is independently able to evaluate the risks and merits of acquiring the Purchased Units; and (d) represents and warrants that it has had opportunity review all applicable documentation, to do all investigations into Concord Blue Patent that it deemed necessary and to have all questions it may have answered with respect thereto.

(c)     Brokers. Buyer does not have any contract, arrangement or understanding with any broker, finder or similar agent with respect to the transactions contemplated by this Agreement.

8.     Right of withdrawal. Buyer 1 shall – in its sole discretion – have the exclusive right to withdraw from this Unit Purchase Agreement. This right can only be exercised until January 31st, 2018. Buyer 1 shall notify Seller and the other Buyers in writing of the withdrawal from this Agreement. If the right of withdrawal is exercised by Buyer 1, all parties shall mutually restitute any services received in performance of this Agreement. For the avoidance of doubt, in the case of Buyer 1 withdrawing from the Agreement, this withdrawal shall also be effective for and against Buyers 2 and 3. Insofar as the Purchased Units have already been transferred to the Buyers, they have to be transferred back to the Seller. In turn, the Seller has to refund the respective Purchase Price to each Buyer.

9.     Miscellaneous.

(a)     Survival of Warranties. The warranties, representations and covenants of the parties contained in or made pursuant to this Agreement shall survive the execution and delivery of this Agreement and the Closing indefinitely and shall in no way be affected by any investigation of the subject matter thereof made by or on behalf of the parties.

(b)     Indemnification. From and after the Closing, each party to this Agreement shall indemnify, hold harmless and defend the other parties from and against, and reimburse such parties with respect to, any and all losses, damages, liabilities, costs and expenses, including interest from the date of such loss to the time of payment, penalties and reasonable attorney's fees incurred by such party by reason of or arising out of or in connection with: (i) any breach or inaccuracy of any representation or warranty of the indemnifying party made in this Agreement or any of the other Transaction Documents or (ii) any failure by the indemnifying party to perform any covenant required to be performed by such party pursuant to this Agreement or any of the other Transaction Documents.

(c)     Successors and Assigns. Except as otherwise provided in this Agreement, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement, express or implied,

6

is intended to confer upon any party other than the parties to this Agreement or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

(d) <u>Expenses</u>. Each party to the transactions contemplated by this Agreement shall pay its own expenses, if any, incurred in connection with such transactions.

(e) <u>Further Assurances</u>. At any time on or after the Closing, the parties hereto shall each perform such acts, execute and deliver such instruments, assignments, endorsements and other documents and do all such other things consistent with the terms of this Agreement as may be reasonably necessary to accomplish the transactions contemplated by this Agreement or otherwise carry out the purpose of this Agreement.

(f) <u>No Prejudice; Independent Counsel</u>. This Agreement has been negotiated by and among the parties hereto and shall not be construed in favor of or against any party due to its participation in the preparation of the Agreement. Seller acknowledges that it has had the opportunity to review this Agreement with independent legal counsel.

(g) <u>Governing Law and Venue</u>. This Agreement shall be governed by and construed in accordance with the laws of Germany, without regard to its conflicts of law provisions, and venue of any dispute arising under or concerning this Agreement shall lie exclusively in Dusseldorf, Germany.

(h) <u>Counterparts; Facsimile</u>. This Agreement may be executed in two or more counterparts or by facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(i) <u>Titles and Subtitles</u>. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

(j) <u>Notices</u>. All notices, consents, waivers, and other communications under this Agreement must be in writing and shall be deemed to have been duly given when (a) delivered by hand, (b) sent by email (with written confirmation of receipt), or (c) when received by the addressee, if sent by a nationally recognized overnight delivery service (receipt requested), in each case, to the appropriate addresses and email addresses set forth below (or to such other addresses and email addresses as a party may designate by notice to the other parties):

| | |
|---|---|
| Concord Blue Patent: | Koenigsallee 6 – 8<br>40212 Duesseldorf<br>Germany<br>ct@concordblue.de |
| Seller: | CT Power GmbH<br>Koenigsallee 6 – 8<br>40212 Duesseldorf<br>Germany<br>Company Number: HRB 41478<br>ct@concordblue.de |

7

| | |
|---|---|
| Buyer 1: | Municipal Employees' Retirement System of Michigan<br>1134 Municipal Way<br>Lansing, MI 48917<br>USA<br>gaia@verdantf.com and berry@verdantf.com |
| Buyer 2: | Ms. Gaia Arnaboldi<br>*With business address*:<br>Dreikönigstraße 33<br>CH-8002 Zurich<br>Switzerland<br>gaia@verdantf.com |
| Buyer 3: | Ms. Berry Polmann<br>*With business address*:<br>Dreikönigstraße<br>CH-8002 Zurich<br>Switzerland<br>berry@verdantf.com |
| with a copy to: | gb@concordblueenergy.com |

(k) <u>Attorneys Fees</u>. If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled.

(l) <u>No Waiver</u>. The failure or delay by a party to enforce any provision of this Agreement will not in any way be construed as a waiver of any such provision or prevent that party from thereafter enforcing any other provision of this Agreement. The rights granted to the parties hereunder are cumulative and will not constitute a waiver of either party's right to assert any other legal remedy available to it.

(m) <u>Third-Party Beneficiaries</u>. This Agreement shall not confer upon any person not a party to this Agreement any rights or remedies under this Agreement or otherwise.

(n) <u>Severability</u>. If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

(o) <u>Entire Agreement; Amendments</u>. This Agreement shall constitute the entire contract between the parties, and there are no other or further agreements outstanding not specifically mentioned herein, except that this Agreement may be amended, altered, supplemented or modified, but only by the written agreement of all the parties to this Agreement.

8

| | |
|---|---|
| — **Appendix 1** | Articles of Association of 8th August 2012 |
- **Appendix 1**    Articles of Association of 8th August 2012
- **Appendix 2**    Rules of Procedure for the Management
- **Appendix 3**    Articles of Association
- **Appendix 4**    Shareholders' Agreement

[*Signature page follows*]

9

**IN WITNESS WHEREOF**, the parties have executed this Unit Purchase Agreement as of the date first above written.

**CONCORD BLUE PATENT:**
**CONCORD BLUE PATENT GMBH**

By: _G TL G_

Name: _C. Thannhaeuser_

Title: _Chairman_

**SELLER:**
**CT POWER GMBH**

By: _G TL G_

Name: _C. Thannhaeuser_

Title: _Chairman_

**BUYER 1:**
**MUNICIPAL EMPLOYEES' RETIREMENT SYSTEMS OF MICHIGAN**

By: _[signature]_

Name: _G. ARNABOLDI / B. POLMANN_

Title: _MANAGING PARTNERS JEROMWP_

**BUYER 2:**
**MS. GAIA ARNABOLDI**

By: _[signature]_

Name: _G ARNABOLDI_

**BUYER 3:**
**MR. BERRY POLMANN**

By: _[signature]_

Name: _Berry Polmann_

10