# EXHIBIT 23

**Sole Member Confirmation**


**Verdantf AG**

registered address: Kobiboden 63, 8840 Einsiedeln, Switzerland
registered with the commercial register of the kanton Schwyz under CHE-144.966.055

the "**Member**"

On 22 February 2022, Mr Berry Laurens Polmann, born on 5 March 1973, residing at 8424 Embrach, Wingertstr. 22, Switzerland, signed a share transfer agreement between himself and Ms Gaia Arnaboldi, born on 3 March 1975, residency in 8908 Hedingen, Haldenrebenstr. 1, Switzerland, as assignors and CB Patent Investments LLC with seat in Carson City, Nevada, USA registered with the Nevada Secretary of State NVID: NV20131732456 (Entity ID: E0606392013-6) ("**Company**") as assignee in relation to all shares formerly held by the assignors (notarized treaty dated 22 February 2022, UVZ K 563/2022, of civil law notary Moritz Kleiderman residing in Lörrach, Germany (the "**Share Transfer**")).

In relation to the Share Transfer, waiving all requirements as to notice and formalities as to the making of the below confirmations, the Member, insofar also acting as Company Secretary of the Company and the signatories also as the Officers and Vice Presidents of the Company hereby unconditionally and irrevocably certify:

1.  The Member acquired all membership interests in the Company by Membership Interest Purchase Agreement dated 28 December 2021 (attached as **Annex 1**) and has not disposed the membership interests or part thereof since the acquisition. The Member is thus the Sole Member of the Company.

2.  Mr Berry Laurens Polmann is – and was at the time of the Share Transfer – Vice President of the Company and in his capacity as Vice President authorized to solely represent the Company with regard to the Share Transfer and related declarations, measures and actions, including the power to conclude the Share Transfer with himself or with any person for whom he is acting as a representative as the other contracting party, as stated in the Second Amended and Restated Limited Liability Company Agreement of the Company executed and dated 28 December 2021 (**Annex 2**) which in relation to the above has not been amended and no conflicting resolution been passed since that date.


[*notarial certification of signature by local swiss notary required, no apostille required*]




Place, Date, Signature: _____

Berry Laurens Polmann, President of Verdantf AG, Vice President of CB Patent Investments LLC



Place, Date, Signature: _____

Gaia Arnaboldi, Member of Verdantf AG, Vice President of CB Patent Investments LLC

CONFIDENTIAL

## MEMBERSHIP INTEREST PURCHASE AGREEMENT

This Membership Interest Purchase Agreement (this "Agreement"), dated as of December 28, 2021, is entered into by and among Verdantf AG, a Swiss limited company ("Purchaser"), Wesley Bilson, as trustee of the Wesley Bilson Family Trust u/d/t December 28, 1994 ("WB"), and Sandra Castaldo Bilson, as trustee of the Sandra Bilson Revocable Trust dated January 23, 1996 ("SCB", and together with WB, the "Sellers", and each, a "Seller"). Each of Purchaser and each Seller are referred to herein as a "Party", and collectively as the "Parties".

WHEREAS, on December 7, 2021, the Sellers entered into that certain Amended and Restated Operating Agreement (the "Existing LLCA") of CB Patent Investments LLC, a Nevada limited liability company (the "Company");

WHEREAS, WB is the holder of 73.67% of the Membership Interests (as defined below), representing all of the Equity Interests of the Company held by WB (the "WB Interests");

WHEREAS, SCB is the holder of 26.33% of the Membership Interests, representing all of the Equity Interests of the Company held by SCB (the "SCB Interests", and together with the WB Interests, the "Purchased Interests");

WHEREAS, each Seller desires to sell to Purchaser, and Purchaser wishes to purchase from each Seller, all Membership Interests held by such Seller, subject to the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

### ARTICLE 1
### DEFINED TERMS

1.01    Defined Terms. As used in this Agreement, the following terms have the meanings set forth below:

"Affiliate" means, with respect to any Person, any other Person controlling, controlled by, or under common control with such Person. For purposes of this definition and the Agreement, the term "control" (and correlative terms) means the power, whether by contract, equity ownership, or otherwise, to direct the policies or management of a Person. The term "Affiliate" shall be deemed to include current and future "Affiliates".

"Agreement" has the meaning set forth in the Preamble.

"Business Day" means any day other than (a) a Saturday, Sunday, or a federal holiday or (b) a day on which commercial banks in New York, New York or Zurich, Switzerland are authorized or required to be closed.

"CB Patent GmbH" has the meaning set forth in Section 3.05(g).

"Claims" has the meaning set forth in Section 6.01(a).

"Closing" has the meaning set forth in Section 2.03.

"Closing Date" has the meaning set forth in Section 2.03.

"Company" has the meaning set forth in the Recitals.

"Contract" means any written, oral, or other agreement, contract, license, sublicense, subcontract, settlement agreement, lease, power of attorney, understanding, arrangement, instrument, note, purchase order, warranty, insurance policy, benefit plan, or legally binding commitment or undertaking of any nature.

"Damages" includes any loss, damage, injury, Liability, claim, demand, settlement, judgment, award, fine, penalty, tax, fee (including reasonable attorneys' fees), charge, cost (including costs of investigation), or Expense of any nature.

"Entity" means any corporation (including any non-profit corporation), general partnership, limited partnership, limited liability partnership, joint venture, estate, trust, company (including any limited liability company, or joint stock company), firm or other enterprise, association, organization, or entity.

"Exchange Act" means the Securities and Exchange Act of 1934, as amended, or any successor Law, and the rules and regulations promulgated thereunder.

"Equity Interests" means shares of capital stock, membership interests in a limited liability company, partnership interests, beneficial interests in a trust, or other equity ownership interests in a Person, and any warrants, options, or other rights entitling the holder thereof to purchase or acquire any such Equity Interest or any stock appreciation, phantom stock, profit participation, or similar rights with respect to the capital stock of, or other equity or voting interest in any Person.

"Existing LLCA" has the meaning set forth in the Recitals.

"Expense" means any fee, cost, expense, payment, expenditure, or Liability.

"GAAP" means generally accepted accounting principles in the United States in effect as of the applicable date of determination or in effect for the applicable period under consideration, as appropriate.

"Governmental Entity" means any: (a) multinational or supranational body exercising legislative, judicial, or regulatory powers; (b) nation, state, commonwealth, province, territory, county, municipality, district, or other jurisdiction of any nature; (c) federal, state, provincial, local, municipal, foreign, or other government; (d) instrumentality, subdivision, department, ministry, board, court, administrative agency, regulatory authority, or commission, or other governmental entity, authority, or instrumentality or political subdivision thereof; or (e) any professional association or quasi-governmental or private body exercising any executive, legislative, judicial, regulatory, taxing, importing, or other governmental functions.

"Information" has the meaning set forth in Section 3.07(d).

"Investment Advisers Act" means the Investment Advisers Act of 1940, as amended, or any successor law, and the rules and regulations promulgated thereunder.

"Investment Company Act" means the Investment Company Act of 1940, as amended, or any successor Law, and the rules and regulations promulgated thereunder.

2

"Law" means any federal, state, local, municipal, foreign, supranational or other law, statute, constitution, treaty, principle of common law, directive, resolution, ordinance, code, edict, Order, rule, guideline, guidance, regulation, sanction, or requirement issued, enacted, adopted, promulgated, entered, implemented, or otherwise put into effect by or under the authority of any Governmental Entity.

"Legal Proceeding" means any action, suit, litigation, arbitration, claim, assessment, proceeding (including any civil, criminal, administrative, investigative, or appellate proceeding), hearing, inquiry, audit, examination, or investigation commenced, brought, conducted or heard by or before, or otherwise involving, any court or other Governmental Entity or any arbitrator or arbitration panel.

"Liability" means any debt, obligation, duty, or liability of any nature (including any unknown, undisclosed, unmatured, unaccrued, unasserted, contingent, indirect, conditional, implied, vicarious, derivative, joint, several, or secondary liability), regardless of whether such debt, obligation, duty, or liability would be required to be disclosed on a balance sheet prepared in accordance with GAAP and regardless of whether such debt, obligation, duty, or liability is immediately due and payable.

"Lien" means any lien, pledge, hypothecation, charge, mortgage, deed of trust, easement, encroachment, security interest, encumbrance, license, possessory interest, conditional sale, or other title retention arrangement, intangible property right, claim, infringement, option, right of first refusal, preemptive right, community property interest, or restriction of any nature (including any restriction on the voting of any security or restriction on the transfer, use, or ownership of any security or other asset).

"Membership Interests" has the meaning set forth in the Existing LLCA.

"Order" means any order, writ, injunction, judgment, edict, decree, ruling, or award of any arbitrator or any court or other Governmental Entity.

"Party" and "Parties" each has the meaning set forth in the Preamble.

"Permit" means (a) any permit, license, approval, certificate, franchise, permission, clearance, Consent, registration, variance, sanction, exemption, Order, qualification, or authorization issued, granted, given, or otherwise made available by or under the authority of any Governmental Entity or pursuant to any applicable Law or (b) any right under any Contract with any Governmental Entity.

"Person" means any individual, Entity or Governmental Entity.

"Purchase Price" has the meaning set forth in Section 2.02(a).

"Purchased Interests" has the meaning set forth in the Recitals.

"Purchaser" has the meaning set forth in the Preamble.

"Releasees" has the meaning set forth in Section 6.01(a).

"Releasors" has the meaning set forth in Section 6.01(a).

"SCB" has the meaning set forth in the Preamble.

"SCB Interests" has the meaning set forth in the Recitals.

"Securities Act" means the Securities Act of 1933, as amended, or any successor Law, and the rules and regulations promulgated thereunder.

10(Y - 76002D/000001 - 10397940 v4

"Securities Laws" means the Securities Act, the Exchange Act, the Investment Advisers Act, the Investment Company Act, state "blue sky" securities and investment advisory Laws, all similar foreign securities Laws, and the rules and regulations promulgated thereunder and the rules and regulations of the Toronto Stock Exchange and the New York Stock Exchange.

"Sellers" and "Seller" each has the meaning set forth in the Preamble.

"Transactions" has the meaning set forth in Section 2.01.

"WB" has the meaning set forth in the Preamble.

"WB Interests" has the meaning set forth in the Recitals.

## ARTICLE II
## PURCHASE AND SALE

2.01    Purchase and Sale. Subject to the terms and conditions set forth herein, at the Closing (as defined herein), each Seller shall sell to Purchaser, and Purchaser shall purchase from each Seller, all of such Seller's right, title and interest in and to all Membership Interests held by such Seller, free and clear of any Liens, for the consideration specified in Section 2.02 (the "Transactions").

2.02    Purchase Price.

    (a)    The aggregate purchase price for all Purchased Interests shall be ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "Purchase Price"), payable to the Sellers as follows:

        (i)    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ payable to WB in respect of the WB Interests; and

        (ii)    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ payable to SCB in respect of the SCB Interests.

    (b)    Purchaser shall pay the Purchase Price to the Sellers in the amounts set forth in Section 2.02(a) at the Closing in cash, by wire transfer of immediately available funds to the accounts set forth on Schedule B.

2.03    Closing. The closing of the Transactions (the "Closing") shall take place simultaneously with the execution of this Agreement on the date of this Agreement (the "Closing Date"). The consummation of the Transactions shall be deemed to occur at 12:01 a.m. Pacific Time on the Closing Date.

2.04    Transfer Taxes. The Sellers shall pay for any sales, use or transfer taxes, documentary charges, recording fees or similar taxes, charges, fees or expenses, if any, that become due and payable as a result of the Transactions.

2.05    Withholding Taxes. Purchaser shall be entitled to deduct and withhold from the Purchase Price all taxes that Purchaser may reasonably determine to be required to deduct and withhold under any provision of tax Law. All such withheld amounts shall be treated as delivered to the applicable Seller hereunder.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF THE SELLERS

Each Seller hereby represents and warrants, solely on behalf of such Seller and not on behalf of any other Seller, to and for the benefit of Purchaser, that the following statements contained in this ARTICLE III are true and correct as of the date hereof.

3.01    Authority; Enforceability. Such Seller has all requisite power, authority, and capacity to enter into this Agreement, to carry out its obligations hereunder and to consummate the Transactions. This Agreement has been duly executed and delivered by such Seller, and this Agreement constitutes legal, valid and binding obligations of such Seller, enforceable against such Seller in accordance with its terms.

3.02    No Conflicts; Consents. The execution, delivery and performance by such Seller of this Agreement, and the consummation of the Transactions, do not and will not: (a) violate or conflict with any Law applicable to such Seller; (b) conflict with, or result in (with or without notice or lapse of time or both) any violation of, or default under, or give rise to a right of termination, acceleration or modification of any obligation or loss of any benefit under any Contract to which such Seller is a party; (c) result in any violation, conflict with or constitute a default under the Company's organizational documents (including the Existing LLCA); or (d) result in the creation or imposition of any Lien on the Purchased Interests, or any portion thereof. No consent, approval, waiver or authorization is required to be obtained by such Seller from any Person in connection with the execution, delivery and performance by such Seller of their obligations under this Agreement or the consummation of the Transactions.

3.03    Legal Proceedings. There is no Legal Proceeding of any nature pending or, to such Seller's knowledge, threatened against or by such Seller or any Affiliate thereof (a) relating to or affecting the Purchased Interests; or (b) that challenges or seeks to prevent, enjoin or otherwise delay the Transactions. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Legal Proceeding.

3.04    Ownership of Purchased Interests.

(a)    Schedule A lists all issued and outstanding Equity Interests of the Company. Other than as set forth on Schedule A, there are no other Equity Interests of the Company issued, reserved for issuance, held as treasury shares, or outstanding and there are no outstanding or authorized Contracts, options, warrants, calls, puts, convertible or exchangeable securities, subscriptions, rights (including any preemptive rights), other plans or commitments, or claims of any character, contingent or otherwise, whatsoever, relating to Equity Interests of the Company to which the Company is a party or is bound or requiring the issuance, delivery, or sale of any Equity Interests of the Company. The Equity Interests of the Company set forth on Schedule A are duly authorized, validly issued, fully paid and non-assessable, are not subject to any preemptive rights, rights of first refusal or similar rights, other than as set forth in the Existing LLCA, and have been issued in violation of any preemptive rights, rights of first refusal or similar rights.

(b)    Such Seller owns of record and beneficially and has good, valid, and marketable title to the Equity Interests of the Company that are set forth set forth opposite its name on Schedule A, free and clear of all Contracts, options, warrants, calls, puts, convertible or exchangeable securities, subscriptions, rights (including any preemptive rights), other plans or commitments, or claims of any character, contingent or otherwise and other Liens, except for any restrictions on transfer of such Equity Interests of the Company under applicable Securities Laws

5

or under the Existing LLCA.

(c)     Such Seller is the sole legal, beneficial, record and equitable owner of the Purchased Interests set forth opposite its name on Schedule A, free and clear of all Liens.

(d)     There are no voting trusts, proxies or other agreements or understandings in effect with respect to the voting or transfer of any of the Purchased Interests set forth opposite such Seller's name on Schedule A.

(e)     No Person has, or has asserted, any right, title, claim, equity or interest in the Purchased Interests set forth opposite such Seller's name on Schedule A, or the proceeds thereof.

(f)     Such Seller has not signed a power of attorney or other authorization respecting the Purchased Interests set forth opposite such Seller's name on Schedule A that is now outstanding and in force.

(g)     Other than the Sellers or as otherwise contemplated by this Agreement, no Person is entitled to receive any payment or consideration from Purchaser or the Company as a result of or in connection with the Transactions.

3.05    The Company.

(a)     The Company (i) is duly organized, and validly existing, and in good standing (or equivalent status), under the laws of the State of Nevada; (ii) has the requisite limited liability company power and authority to own, lease and operate its properties and to carry on its business as now being conducted and as currently planned by the Company to be conducted; and (iii) is duly qualified, licensed, and admitted to do business, and is in good standing (or equivalent status), in each jurisdiction in which such qualification, license, or admission is necessary.

(b)     The Company has Made Available to Purchaser accurate and complete copies of the Company's organizational documents (including the Existing LLCA). All actions taken and all transactions entered into by the Company have been duly approved by all necessary action of the managers, members, or officers of the Company, as applicable. There have been no material violations of any provision of any of the Company's organizational documents (including the Existing LLCA) and the Company has not taken any actions that are inconsistent in any material respect with any resolution adopted by the managers, members, or officers of the Company, as applicable.

(c)     There are no outstanding powers of attorney executed by or on behalf of the Company in favor of another Person.

(d)     There is not currently, and (except for that certain matter involving the Company and Christopher Thannacuser, including Case No. 19STCV26977 of the Superior Court of California, County of Los Angeles, Department 61) since January 1, 2017 there has not been, any Legal Proceeding pending or threatened in writing, or, to the knowledge of such Seller, threatened orally (i) against the Company or any current or former employee, manager, or officer of the Company and which relates to the Company or (ii) that involves any of the assets owned or used in any material manner by the Company.

(e)     The Company, and solely in connection with the business of the Company, each manager and each officer of the Company (i) is, and at all times has been, in material compliance

6

with all applicable Laws, (ii) is not subject to any cease-and-desist or other written Order issued by, or party to any Contract, consent agreement or memorandum of understanding with, or party to any commitment letter or similar written undertaking to, or subject to any written Order or directive by, or a recipient of any supervisory letter from or has adopted any resolutions at the request of, any Governmental Entity and, to the knowledge of such Seller, none of them is threatened with the imposition or receipt of any of the foregoing, and (iii) to the knowledge of such Seller (A) is not subject to any notice of investigation by any Governmental Entity, nor (B) has any such investigation been initiated or threatened.

(f) The Company holds, to the extent required by applicable Laws, all Permits from, and has made all declarations and filings with, all Governmental Entities that are required to be held or made for the operation of its business as currently conducted.

(g) The Company has no Liabilities, and the sole assets of the Company are the shares of common stock with share numbers 24,376 – 25,000, par value EUR 1.00 each, as contained in the shareholders list dated 29 December 2020 of Concord Blue Patent GmbH, a limited liability company under the laws of the Federal Republic of Germany, registered with the commercial register at the local court of Duesseldorf, Germany under HRB 68793 ("CB Patent GmbH"), representing two and a half percent (2.5%) of the outstanding Equity Interests of CB Patent GmbH.

3.06 Brokers. No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the Transactions based upon arrangements made by or on behalf of such Seller.

3.07 Non-Reliance.

(a) Such Seller (i) has such knowledge and experience in financial and business matters as to be capable of evaluating the merits, risks and suitability of the Transactions, (ii) has received and carefully reviewed such information that he and his advisers deem necessary to make the decision to enter into this Agreement and to consummate the Transactions, and (iii) is consummating the Transactions with a full understanding of all of the terms, conditions and risks and willingly assumes those terms, conditions and risks.

(b) Such Seller has evaluated the merits and risks of the Transactions based exclusively on their own independent review and consultations with such investment, legal, tax, accounting and other advisers as it deemed necessary, and such Seller is able to bear the economic risks associated with the sale. Such Seller has made their own decision concerning the Transactions without reliance on any representation or warranty of, or advice from, Purchaser or the Company.

(c) Neither Purchaser, nor the Company, nor any of their respective Affiliates, officers, directors, principals, equityholders, employees or agents has been requested to or has provided such Seller with any information or advice with respect to the Purchased Interests, nor is such information or advice necessary or desired.

(d) Such Seller acknowledges and understands that (i) the Company may possess material nonpublic information regarding the Company that may not be known to such Seller that may substantially impact the value of the Purchased Interests, including (A) information received by principals and employees of the Company in their capacities as directors, officers, significant equityholders or Affiliates of the Company and (B) information received on a privileged basis

7

from the attorneys and financial advisers representing the Company and the board of managers of the Company (collectively, the "Information"), and (ii) neither the Company, nor any other Person, is disclosing such Information, if any, to such Seller. Notwithstanding the foregoing, such Seller has deemed it appropriate to enter into this Agreement and to consummate the Transactions.

(e)    Such Seller acknowledges that Purchaser is relying upon, without limitation, the representations and warranties contained in this ARTICLE III in engaging in the Transactions and would not engage in the Transactions in the absence of such representations and warranties.

3.08    No Other Representations or Warranties. Except for the representations and warranties contained in this ARTICLE III, no Seller, nor any agent of any Seller, has made or makes any other express or implied representation or warranty, either written or oral, on behalf of any Seller.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to and for the benefit of the Sellers, that the following statements contained in this ARTICLE IV are true and correct as of the date hereof.

4.01    Organization and Authority of Purchaser; Enforceability. Purchaser has all requisite power, authority, and capacity to enter into this Agreement, to carry out its obligations hereunder and to consummate the Transactions. This Agreement has been duly executed and delivered by Purchaser, and (assuming due authorization, execution and delivery by the Sellers) this Agreement constitutes legal, valid and binding obligations of Purchaser enforceable against Purchaser in accordance with its terms.

4.02    No Conflicts; Consents. The execution, delivery and performance by Purchaser of this Agreement, and the consummation of the Transactions, do not and will not violate or conflict with any Law applicable to Purchaser. No consent, approval, waiver or authorization is required to be obtained by Purchaser from any Person in connection with the execution, delivery and performance by Purchaser of its obligations under this Agreement or the consummation of the Transactions.

4.03    Brokers. No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the Transactions based upon arrangements made by or on behalf of Purchaser.

## ARTICLE V
## CLOSING DELIVERABLES

5.01    Closing Deliverables of the Sellers. At the Closing, the Sellers shall deliver to Purchaser:

(a)    an IRS Form W-8 or W-9, duly executed by each Seller; and

(b)    a certificate of good standing (or equivalent thereof) of the Company dated no earlier than five (5) Business Days prior to the Closing Date from the Secretary of State of the State of Nevada.

DOCS – 766030/000001 - 10397940 v4

## ARTICLE VI
## CERTAIN COVENANTS

6.01    Release.

(a)    Each Seller, on behalf of itself and its respective Affiliates, subsidiaries, successors and assigns, and each of their respective, including former, directors, officers, managers, employees, attorneys, agents, representatives, successors and assigns (collectively, the "Releasors"), does hereby forever release, remise, discharge, waive, and acquit Purchaser, the Company, Municipal Employees' Retirement System of Michigan, and CT Power GmbH, and each of their respective direct and indirect equity holders, subsidiaries, Affiliates and each of their respective, including former, directors, officers, managers, employees, attorneys, agents, representatives, successors and assigns (collectively, the "Releasees") from any and all actions, causes of action, suits, losses, liabilities, rights, debts, liabilities, dues, sums of money, accounts, reckonings, obligations, costs, expenses, fees liens, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands, of every kind and nature whatsoever, known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, in law, admiralty, or equity (including any and all claims alleging violations of Securities Laws, common-law fraud or deceit, breach of fiduciary duty, negligence or otherwise), whether directly, derivatively, representatively or in any other capacity (collectively, "Claims"), which any of such Releasors ever had, now have, or hereafter can, shall, or may have against any of such Releasees from the beginning of time through the date hereof and going forward for all time, including for, upon, or by reason of any matter, cause, or thing, arising out of, related to or in connection with any Claim against Purchaser or the Company, other than any Claims arising out of this Agreement, including any rights (including any co-transfer, tag-along, drag-along, right of first offer, right of first refusal, pre-emptive, consent, or voting right, or right to receive notice) to which such Seller may be entitled under the Existing LLCA. Each Seller further agrees that none of the Releasees shall have any Liability whatsoever to the Releasors due to or in connection with the Releasees' use or non-disclosure of Information or otherwise as a result of the Transactions, and such Seller hereby irrevocably releases, discharges and dismisses any and all Claims, which are based upon or arise from the failure the Company to disclose Information. Each Seller also agrees that it will not institute or maintain, or assist any Person to institute or maintain, any cause of action, suit, complaint or other proceeding against any Releasee as a result of the existence or substance of Information and the fact that Information has not been disclosed to such Seller. Each Seller intends to effect, to the maximum extent permitted by applicable Law, a complete and knowing waiver of its rights thereto as set forth herein.

(b)    Each Releasor understands that it may later discover Claims or facts that may be different from, or in addition to, those that it or any other Releasor now knows or believes to exist regarding the subject matter of the release contained in this Section 6.01, and which, if known at the time of signing this Agreement, may have materially affected this Agreement and such Releasor's decision to enter into it and grant the release contained in this Section 6.01. Nevertheless, the Releasors intend to fully, finally and forever settle and release all Claims that now exist, may exist, or previously existed, as set out in the release contained in this Section 6.01, whether known or unknown, foreseen or unforeseen, or suspected or unsuspected, and the release given herein is and will remain in effect as a complete release, notwithstanding the discovery or existence of such additional or different facts. The Releasors hereby waive any right or Claim that might arise as a result of such different or additional Claims or facts.

(c)    Each Releasor (i) knows of no Claims against any one or more of the Releasees

9

that are not covered by the release contained in this Section 6.01, and (ii) has neither assigned nor transferred any of the Claims released herein to any Person, and no Person has subrogated to or has any interest or rights in any Claims.

(d)     Each Releasor agrees that the release contained in this Section 6.01 shall be and remain effective in all respects, notwithstanding such different or additional facts, or the discovery thereof, and further hereby expressly waives any and all rights provided in California Civil Code Section 1542, or any similar provision, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

6.02     Indemnification. The Sellers hereby agree to jointly and severally indemnify Purchaser, its Affiliates (including the Company) and each of their respective officers, directors, employees, equityholders, other securityholders, members, agents, and representatives from and against any Damages suffered or incurred by any of the foregoing resulting from, related to or arising out of (a) any breach of any representation, warranty, covenant or agreement made by any Seller in this Agreement, and (b) any claim asserted or held by any third party (i) alleging that they have any right, title or interest in or to the Purchased Interests or (ii) alleging or involving any prior sale of, ownership of, interest in or right to acquire any interests, shares, or other Equity Interests of the Company or any Seller, or that is in any way inconsistent with, or that involves an allegation of facts inconsistent with, any information set forth in Schedule A.

## ARTICLE VII
### Miscellaneous

7.01     Expenses. Except as otherwise provided in Section 2.04 and Section 6.02, each Party shall bear its own costs and expenses incurred in connection with this Agreement and the Transactions.

7.02     Further Assurances. Following the Closing, each of the Parties shall, and shall cause their respective Affiliates to, execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the Transactions.

10

OHY - 766820 000001 - 10397940 v4

7.03     Notices. All notices and other communications required or permitted to be given or made pursuant to this Agreement shall be made in writing signed by the sender and shall be deemed duly given (a) on the date delivered, if personally delivered, (b) the day that receipt is confirmed (with receipt confirmed by telephone or email) after being sent by email in portable document format (PDF), (c) on the Business Day after being sent by email in portable document format (PDF) if receipt is not confirmed prior to subsection (b) on the date sent. or (d) on the Business Day after being sent by Federal Express or another recognized overnight mail service that utilizes a written form of receipt for next day or next Business Day delivery, in each case addressed to the applicable Party at the address set forth below: provided, that a Party may change its address for receiving notice by the proper giving of notice hereunder.

          If to Purchaser:

                    [illegible]
                    Kentraden 53
                    8870 Einsiedeln
                    S[illegible]
                    Attention: Gaia Arnaboldi
                    Email: gaia@verdantf.com
                    Telephone: +41 79 555 3375

          with a copy (which shall not constitute notice) to:

                    Hogan Lovells International LLP
                    Karl-Scharnagl-Ring 5
                    80539 München
                    Germany
                    Attention: Christian Herweg
                    Email: christian.herweg@hoganlovells.com
                    Telephone: +49 89 290 12 242

          If to any Seller, to the applicable address and email for receiving notice set forth on [illegible].

7.04     Headings. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

7.05     Severability. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the Parties shall negotiate in good faith to modify the Agreement so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the Transactions be consummated as originally contemplated to the greatest extent possible.

7.06     Entire Agreement. This Agreement constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.

7.07     Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and permitted assigns. Neither Party may assign its

11

rights or obligations hereunder without the prior written consent of the other Party, which consent shall not be unreasonably withheld or delayed. No assignment shall relieve the assigning party of any of its obligations hereunder.

7.08    No Third-Party Beneficiaries. This Agreement is for the sole benefit of the Parties and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement. Notwithstanding the foregoing, the Parties acknowledge and agree that the Company is an intended third-party beneficiary of this Agreement, is entitled to the rights and benefits conferred upon it by this Agreement, may rely on the representations, warranties and covenants made in this Agreement, and may enforce the provisions of this Agreement as if it were a Party.

7.09    Amendment and Modification. This Agreement may be amended only by an instrument in writing executed by the Parties, and supplemented only by documents delivered or to be delivered in accordance with the terms thereof.

7.10    Waiver. No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

7.11    Governing Law. This Agreement, and any action, arbitration, suit or other Legal Proceeding arising out of or relating to this Agreement (including the enforcement of any provision of this Agreement), any of the Transactions or the legal relationship of the Parties (whether at law or in equity, whether in contract or in tort, or otherwise), shall be governed by and construed and interpreted in accordance with the Laws of the State of New York irrespective of the choice of laws principles of the State of New York, as to all matters, including matters of validity, construction, effect, enforceability, performance and remedies and in respect of the statute of limitations or any other limitations period applicable to any claim, controversy or dispute.

7.12    Forum and Venue. Any action, suit or other Legal Proceeding arising out of or relating to this Agreement (including the enforcement of any provision of this Agreement), any of the Transactions or the legal relationship of the Parties (whether at law or in equity, whether in contract or in tort or otherwise), including an action, suit or other Legal Proceeding based upon fraud, intentional misrepresentation or willful misconduct, shall be brought or otherwise commenced exclusively in the state or federal courts located in in the borough of Manhattan in the State of New York or the United States Southern District of New York. Each Party: (a) expressly and irrevocably consents and submits to the jurisdiction of each state and federal court located in the borough of Manhattan in the State of New York or the United States Southern District of New York (and each appellate court located in the same) in connection with any such action, suit, or Legal Proceeding; (b) agrees that each state and federal court located in the borough of Manhattan in the State of New York or the United States Southern District of New York shall be deemed to be a convenient forum; and (c) agrees not to assert (by way of motion, as a defense, or otherwise), in any such action, suit, or Legal Proceeding commenced in any state or federal court located in the borough of Manhattan in the State of New York or the United States Southern District of New York, any claim that such Party is not subject personally to the jurisdiction of such court, that such action, suit, or Legal Proceeding has been brought in an inconvenient forum, that the venue of such

12

action, suit, or Legal Proceeding is improper or that this Agreement or the subject matter of this Agreement may not be enforced in or by such court.

7.13    Waiver of Jury Trial. Each Party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any Legal Proceeding arising out of or relating to this Agreement or the Transactions.

7.14    Specific Performance. The Parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity. Each Party (a) agrees that it shall not oppose the granting of such specific performance or relief and (b) hereby irrevocably waives any requirements for the security or posting of any bond in connection with such relief.

7.15    Counterparts. This Agreement may be executed in two or more counterparts, each and all of which shall be deemed an original and all of which together shall constitute but one and the same instrument. A signature delivered by email of a PDF document shall be deemed an original signature hereto and such delivery shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

7.16    Construction.

(a)    Gender; Plurals. For purposes of this Agreement, whenever the context requires: the singular number shall include the plural, and vice versa; the masculine gender shall include the feminine and neuter genders; the feminine gender shall include the masculine and neuter genders; and the neuter gender shall include the masculine and feminine genders.

(b)    Ambiguities. The Parties agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting Party shall not be applied in the construction or interpretation of this Agreement.

(c)    Including. As used in this Agreement, the words "include" and "including", and variations thereof, shall not be deemed to be terms of limitation, but rather shall be deemed to be followed by the words "without limitation".

(d)    Or. As used in this Agreement, the word "or" shall mean "and/or".

(e)    References. Except as otherwise indicated, all references to "Sections", "Schedules", and "Exhibits" in this Agreement or in any Schedule or Exhibit to this Agreement are intended to refer to Sections of this Agreement and Schedules and Exhibits to this Agreement, respectively. Any Contract, instrument, or statute defined or referred to in this Agreement means such Contract, instrument, or statute, in each case as from time to time amended, modified, or supplemented, including (in the case of Contracts or instruments) by waiver or consent and (in the case of statutes) by succession or comparable successor statutes. Any Contract or instrument defined or referred to in this Agreement shall include all exhibits, schedules, and other documents or Contracts attached thereto. Any statute defined or referred to in this Agreement shall include all rules and regulations promulgated thereunder.

(f)    Hereof. The terms "hereof", "herein", "hereunder", "hereby", "herewith", and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement as a

13

whole and not to any particular provision of this Agreement.

(g)     Dollars; Exchange Rate. Any references in this Agreement to "Dollars" or "$" shall be to U.S. dollars, unless otherwise specified.

(h)     Certain Measurements. Unless otherwise specified in this Agreement, in computing any period of time described in this Agreement, the date that is the reference date in calculating such period, or the day of the act or event after which the designated period of time begins to run, will be excluded, and the last day of the period so computed will be included.

*[Remainder of page intentionally left blank.]*

10Y - 768020/000001 - 10397940 v4

IN WITNESS WHEREOF, the undersigned have executed and delivered this Membership Interest Purchase Agreement as of the date first set forth above.

PURCHASER:

VERDANTE AG

By: _____

Name: Gaia Arnaboldi      Berry Polmann

Title: Managing Partner      Managing Partner

IN WITNESS WHEREOF, the undersigned have executed and delivered this Membership Interest Purchase Agreement as of the date first set forth above.

SELLER:

**THE WESLEY BILSON FAMILY TRUST U/D/T DECEMBER 28, 1994**

By: _____
Wesley Bilson, Trustee

*[Membership Interest Purchase Agreement]*

IN WITNESS WHEREOF, the undersigned have executed and delivered this Membership Interest Purchase Agreement as of the date first set forth above.

SELLER:

THE SANDRA BILSON REVOCABLE TRUST DATED JANUARY 23, 1996

By: _____
    Sandra Bilson, Trustee

[*Membership Interest Purchase Agreement*]

## Schedule A

### Capitalization of the Company

| Name of Member of CB Patent Investments LLC | Contact Information | Membership Interests |
|---|---|---|
| Wesley Bilson, as trustee of the Wesley Bilson Family Trust u/d/t December 28, 1994 | | 73.67% |
| Sandra Castaldo Bilson, as trustee of the Sandra Bilson Revocable Trust dated January 23, 1996 | | 26.33% |
| TOTAL | | 100% |

10lY - 768020/000001 - 10397940 v4

## Schedule B

### Wire Information

| Seller | Wire Information | |
|--------|------------------|---|
| Wesley Bilson, as trustee of the Wesley Bilson Family Trust u/d/t December 28, 1994 | | |
| Sandra Castaldo Bilson, as trustee of the Sandra Bilson Revocable Trust dated January 23, 1996 | | |

10CY - 766020/000001 - 10397940 v.4

**STATE OF NEVADA**

**BARBARA K. CEGAVSKE**
Secretary of State

**KIMBERLEY PERONDI**
Deputy Secretary for
Commercial Recordings



**OFFICE OF THE
SECRETARY OF STATE**

*Commercial Recordings Division*
*202 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

## Business Entity - Filing Acknowledgement

12/29/2021

**Work Order Item Number:** W2021122900852-1805941
**Filing Number:** 20211985601
**Filing Type:** Amendment to Articles of Organization
**Filing Date/Time:** 12/29/2021 10:00:00 AM
**Filing Page(s):** 3

**Indexed Entity Information:**

**Entity ID:** E0606392013-6

**Entity Name:** CB PATENT
INVESTMENTS LLC

**Entity Status:** Active

**Expiration Date:** None

Non-Commercial Registered Agent
CHRIS O'NEAL
5422 LONGLEY LANE SUITE A, RENO, NV 89511, USA

The attached document(s) were filed with the Nevada Secretary of State, Commercial
Recording Division. The filing date and time have been affixed to each document,
indicating the date and time of filing. A filing number is also affixed and can be used to
reference this document in the future.

*Barbara K. Cegavske*

BARBARA K. CEGAVSKE
Secretary of State

**Commercial Recording Division**
202 N. Carson Street

| Filed in the Office of | Business Number |
| --- | --- |
| *Barbara K. Cegavske* | E0606392013-6 |
| | Filing Number |
| | 20211012222 |
| Secretary of State | Filed On |
| State Of Nevada | 12/29/2021 10:00:00 AM |
| | Number of Pages |
| | 3 |



**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

# Limited-Liability Company:
## Certificate of Amendment (PURSUANT TO NRS 86.216, 86.221 and 86.543)
## Certificate to Accompany Restated Articles or Amended and Restated Articles (PURSUANT TO NRS 86.221)

TYPE OR PRINT - USE DARK INK ONLY - DO NOT HIGHLIGHT

| 1. Entity information: | Name of entity as on file with the Nevada Secretary of State: |
| --- | --- |
| | CB Patent Investments LLC |
| | Entity or Nevada Business Identification Number (NVID):    NV20131732456 |

| 2. Restated or Amended and Restated Articles (Select one): <br><br> (If restating or amending and restating, complete section 1, 2, 3, 5 and 6.) | ☐ Certificate to Accompany Restated Articles or Amended and Restated Articles <br><br> ☐ Articles have been Restated <br><br> ☐ Articles have been Amended and Restated <br><br> * Restated or Amended and Restated articles must be included with this filing type. |
| --- | --- |
| **3. Type of amendment filing being completed:** (Select only one box): <br><br> (If amending, complete section 1, 3, 5 and 6.) | ☐ **Certificate of Amendment to Articles of Organization For a Nevada Limited-Liability Company Before Issuance of Member's Interest** (Pursuant to NRS 86.216) <br><br> The signers thereof are at least two-thirds of the ☐ organizers or the ☐ managers of the limited-liability company <br><br> As of the date of the certificate, no member's interest in the limited-liability company has been issued. <br><br> ☒ **Certificate of Amendment to Articles of Organization For a Nevada Limited-Liability Company** (Pursuant to NRS 86.221) <br><br> The limited-liability company is managed by ☒ Managers or ☐ Members <br><br> The certificate of amendment must be signed by a manager of the company or, if management is not vested in a manager, by a member. <br><br> ☐ **Amendment to Application for Registration of a Foreign Limited-Liability Company** (Pursuant to NRS Chapter 86) <br><br> Name of Foreign Limited-Liability Company if different than registered to transact business in Nevada: <br><br> [   ] <br><br> If amendment is to change the name, the change taking effect: (select all that apply) <br> ☐ The name under which Limited-Liability Company transacts business in this State <br> ☐ Foreign Limited-Liability Company name from home jurisdiction |

This form must be accompanied by appropriate fees.



BARBARA K. CEGAVSKE
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

## Limited-Liability Company:
### Certificate of Amendment (PURSUANT TO NRS 86.216, 86.221 & 86.543)
### Certificate to Accompany Restated Articles or Amended and Restated Articles (PURSUANT TO NRS 86.221)

| 4. Effective date and time: (Optional) | Date: Time: |
|---|---|
| | (must not be later than 90 days after the certificate is filed) |
| 5. Information being changed: | Changes to takes the following effect: |

    ☐ The entity name has been amended.

    ☒ The registered agent has been changed. (attach Certificate of Acceptance from new registered agent)

    ☐ The purpose of the entity has been amended.

    ☒ The directors. managers or general partners have been amended.

    ☐ IRS tax language has been added.

    ☐ Articles have been added.

    ☐ Articles have been deleted.

    ☐ Other

The articles have been amended as follows: (provide article numbers, if available)

Article 4 and Article 5 are amended as set forth below.

(attach additional page(s) if necessary)

| 6. Signature: (Required) | X _____ | Authorized Signer |
|---|---|---|
| | Signature of Manager. Member or Authorized Signer | Title |
| | X _____ | |
| | Signature of Manager, Member or Authorized Signer | Title |

**Please include any required or optional information in space below:**
(attach additional page(s) if necessary)

Article 4 is amended to state that the Company shall be managed by Member(s).

Article 5 is amended to state that the Managing Member of the Company shall be Verdantf AG, a Swiss limited company, with street address at Kobiboden 63, 8840 Einsiedeln, Switzerland.

This form must be accompanied by appropriate fees.



BARBARA K. CEGAVSKE
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

# Registered Agent Acceptance/Statement of Change

(PURSUANT TO NRS 77.310. 77.340. 77.350. 77.380)

TYPE OR PRINT - USE DARK INK ONLY - DO NOT HIGHLIGHT

| 1. Entity information: | Name of represented entity: |
|---|---|
| | CB Patent Investments LLC |
| | Entity or Nevada Business Identification Number (NVID): NV20131732456 (for entities currently on file) |

| 2. Registered Agent Acceptance: | ☐ Registered Agent Acceptance |
|---|---|

| 3. Information Being Changed: | Statement of Change takes the following effect: (select only one) |
|---|---|
| | ☒ Appoints New Agent (complete section 5) |
| | ☐ Update Represented Entity Acting as Registered Agent (complete sections 5) |
| | ☐ Update Registered Agent Name (complete sections 4 & 5) |
| | ☐ Update Registered Agent Address (complete sections 4 & 5) |

| 4. Registered Agent Information Before the Change: (Non-commercial registered agents ONLY) | Chris O'Neal | | |
|---|---|---|---|
| | Name of Registered Agent OR Title of Office or Position with Entity | | |
| | 5422 Longley Lane, Suite A | Reno | Nevada 89511 |
| | Street Address | City | Zip Code |
| | | | Nevada |
| | Mailing Address (if different from street address) | City | Zip Code |

| 5. Newly Appointed Registered Agent or Registered Agent Information After the Change: | ☒ Commercial Registered Agent:(name only below) | ☐ Noncommercial Registered Agent (name and address below) | ☐ Office or Position with Entity (title or position and address below) |
|---|---|---|---|
| | C T Corporation System | | |
| | Name of Registered Agent OR Title of Office or Position within Entity | | |
| | | | Nevada |
| | Street Address | City | Zip Code |
| | | | Nevada |
| | Mailing Address (if different from street address) | City | Zip Code |

| 6. Electronic Notification: (Optional) | Email address for electronic notifications for "Non-Commercial" or "Office or Positions with Entity" registered agents only: |
|---|---|

| 7. Certificate of Acceptance of Appointment of Registered Agent: (Required) | I hereby accept appointment as Registered Agent for the above named Entity. |
|---|---|
| | *Stephanie Honey* **Stephanie Hencz** **Assistant Secretary** |
| | X _____ 12/29/2021 |
| | Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity   Date |

| 8. Signature of Represented Entity: (Required) | X _____ 12/28/2021 |
|---|---|
| | Authorized Signature On Behalf of the Entity   Date |

FEE: $60.00
This form must be accompanied by appropriate fees.

Page 1 of 1
Revised: 1/1/2019

NV024 - 8/14/2019 Wolters Kluwer Online

## SECOND AMENDED AND RESTATED

## LIMITED LIABILITY COMPANY AGREEMENT

### OF

## CB PATENT INVESTMENTS LLC

This SECOND AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (together with the schedules attached hereto, this "**Agreement**") of CB Patent Investments LLC, a Nevada limited liability company (the "**Company**"), dated as of December 28, 2021, is entered into by Verdantf AG, a Swiss limited company, as the sole member (the "**Member**"). Capitalized terms used herein and not otherwise defined have the meanings set forth on Schedule A hereto.

**WHEREAS**, the Company was formed on December 18, 2013 as a limited liability company organized under the law of the State of Nevada;

**WHEREAS**, on December 7, 2021, the Company adopted the Amended and Restated Operating Agreement of the Company (the "**Existing Agreement**");

**WHEREAS**, reference is made to that certain Membership Interest Purchase Agreement (the "**Purchase Agreement**"), dated as of the date hereof, by and among the Member, Wesley Bilson, as trustee of the Wesley Bilson Family Trust u/d/t December 28, 1994, and Sandra Castaldo Bilson, as trustee of the Sandra Bilson Revocable Trust dated January 23, 1996 (the foregoing two, the "**Sellers**") , pursuant to which the Member agreed to purchase and acquire from Seller one hundred percent (100%) of the limited liability company interests of the Company (the "**Purchase**");

**WHEREAS**, the Purchase has been consummated on the date hereof; and

**WHEREAS**, the Member desires to amend and restate the Existing Agreement in its entirety.

**NOW, THEREFORE**, in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned hereby agrees to amend and restate the Existing Agreement in its entirety as follows:

1.      Name. The name of the Company continued hereby is "CB Patent Investments LLC" and all Company business shall be conducted under such name, as well as any other name or names as the Company may from time to time determine.

2.      Purpose. The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under Nevada law and to engage in any and all activities necessary, convenient, desirable or incidental to the foregoing.

3.      Principal Place of Business. The principal place of business of the Company shall be at c/o Verdantf AG, Kobiboden 63, 8840 Einsiedeln, Switzerland. At any time, the Member may change the location of the Company's principal place of business.

4.      Registered Agent and Office. The name and address of the registered agent and office of the Company for service of process in the State of Nevada shall be C T Corporation System, 701 South Carson Street, Suite 200, Carson City, NV 89701. At any time, the Member may designate a different registered agent and/or registered office.

5.     Member. The Member continues as the sole member of the Company upon its execution and delivery of this Agreement. The name, mailing address and Percentage Interest of the Member is set forth on Schedule B attached hereto.

6.     Certificates. The Member, as an authorized person, shall execute, deliver and file, or cause the execution, delivery and filing of, all certificates (and any amendments and/or restatements thereof) required or permitted by the Act to be filed in with the Secretary of State of the State of Nevada. The Member shall execute, deliver and file, or cause the execution, delivery and filing of any certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

7.     Powers. In furtherance of its purpose, but subject to all of the provisions of this Agreement, the Company shall have the power and is hereby authorized to:

       a.     acquire by purchase, lease, contribution of property or otherwise, own, hold, sell, convey, transfer or dispose of any real or personal property which may be necessary, convenient or incidental to the accomplishment of the purpose of the Company;

       b.     act as a trustee, executor, nominee, bailee, director, officer, agent or in some other fiduciary capacity for any Person and to exercise all of the powers, duties, rights and responsibilities associated therewith;

       c.     take any and all actions necessary, convenient or appropriate as trustee, executor, nominee, bailee, director, officer, agent or other fiduciary, including the granting or approval of waivers, consents or amendments of rights or powers relating thereto and the execution of appropriate documents to evidence such waivers, consents or amendments;

       d.     operate, purchase, maintain, finance, improve, own, sell, convey, assign, mortgage, lease or demolish or otherwise dispose of any real or personal property which may be necessary, convenient or incidental to the accomplishment of the purposes of the Company;

       e.     borrow money and issue evidences of indebtedness in furtherance of any or all of the purposes of the Company, and secure the same by mortgage, pledge or other lien on the assets of the Company;

       f.     invest any funds of the Company pending distribution or payment of the same pursuant to the provisions of this Agreement;

       g.     prepay in whole or in part, refinance, recast, increase, modify or extend any indebtedness of the Company and, in connection therewith, execute any extensions, renewals or modifications of any mortgage or security agreement securing such indebtedness;

       h.     enter into, perform and carry out contracts of any kind, including, without limitation, contracts with any Person affiliated with the Member, necessary to, in connection with, convenient to, or incidental to the accomplishment of the purposes of the Company;

       i.     employ or otherwise engage employees, managers, contractors, advisors, attorneys and consultants and pay reasonable compensation for such services;

       j.     enter into partnerships, limited liability companies, trusts, associations, corporations or other ventures with other Persons in furtherance of the purposes of the Company; and

k.     do such other things and engage in such other activities related to the foregoing as may be necessary, convenient or incidental to the conduct of the business of the Company, and have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

8.     Management of the Company. The business affairs of the Company shall be managed by the Member in accordance with Section 86.291 of the Act. Management of the Company shall be vested in the Member. The Member shall act as "Manager" and shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes of the Company described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Nevada. The Member is authorized to execute and deliver any document on behalf of the Company without any vote or consent of any other Person. The Member has the authority to bind the Company. The Member may appoint a President, Vice President, Secretary, Treasurer and/or such other officers as it deems necessary or appropriate, with such authority and upon such terms and conditions as the Member deems appropriate and such authority as may be incident to the applicable officer title. Any such officer shall serve at the pleasure of the Member and may be removed, with or without cause, by the Member. The officers of the Company, as of the effectiveness of this Agreement, are listed on Schedule C attached hereto. Except to the extent otherwise provided herein, each officer (a) shall have a fiduciary duty of loyalty and care to the Company similar to that of officers of business corporations organized under the Business Corporation Act of the State of Nevada, and (b) shall be entitled to (i) represent the Company alone, (ii) grant sub-power of attorney and (iii) conclude legal transactions, including with his- or herself, with any Person controlled by such officer, or with any Person for whom such officer is acting as a representative, in each case as the other contracting party.

9.     Capital Contributions. The Member has contributed to the capital of the Company as set forth in the books and records of the Company. The Member is not required to make any additional capital contributions to the Company.

10.     Allocation of Profits and Losses. The Company's profits and losses, and all items allocable for tax purposes, shall be allocated to the Member.

11.     Distributions. Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Member (or any future member of the Company) on account of its interest in the Company if such distribution would violate the Act, any other applicable law, or the Articles of Organization of the Company.

12.     Books and Records. The Member shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business. The books of the Company shall at all times be maintained by the Member. The Member and its duly authorized representatives shall have the right to examine the Company books, records and documents during normal business hours. The Company shall not have the right to keep confidential from the Member any information that would otherwise be permitted to be kept confidential from the Member pursuant to the Act. The Company's books of account shall be kept using the method of accounting determined by the Member. The Company's independent auditor shall be an independent public accounting firm selected by the Member.

13.     Exculpation and Indemnification.

a.     No Member, officer, employee or agent of the Company and no employee, representative, agent or Affiliate of the Member (collectively, the "Covered Persons") shall be liable to the Company or any other Person who has an interest in or claim against the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good

-3-

faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's willful misconduct.

        b.    To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 13 shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account thereof.

        c.    To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 13.

        d.    A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

        e.    To the extent that, at law or in equity, a Covered Person has duties (including fiduciary duties) and liabilities relating thereto to the Company or to any other Covered Person, a Covered Person acting under this Agreement shall not be liable to the Company or to any other Covered Person for its good faith reliance on the provisions of this Agreement or any approval or authorization granted by the Company or any other Covered Person. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Member to replace such other duties and liabilities of such Covered Person.

        f.    The foregoing provisions of this Section 13 shall survive any termination of this Agreement.

    14.    Assignments. The Member may assign in whole or in part its limited liability company interests in the Company in accordance with the Act. In the event that the Member assigns in whole its limited liability company interests in the Company, the assignee shall be admitted to the Company as the sole member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a signature page to this Agreement. In connection with the assignment of the entire limited liability company interests in the Company, such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

    15.    Resignation. The Member may resign from the Company; provided, that in such event an additional member of the Company shall be admitted to the Company, subject to Section 16, upon its

-4-

execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the resignation, and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

16.     Admission of Additional Members. One or more additional members may be admitted to the Company with the consent of the Member upon such terms and conditions as the Member, in its discretion, shall approve. In the event of the admission of any new member or members, the Member and such additional member or members shall execute an appropriate amendment to this Agreement reflecting such terms and conditions and such other matters which the Member deems appropriate or upon which the Member and such additional member or members shall agree.

17.     Limited Liability. Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

18.     Dissolution.

     a.     The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member, (ii) the retirement, resignation or dissolution of the last remaining member of the Company or the occurrence of any other event which terminates the continued membership of the last remaining member of the Company unless the business of the Company is continued in a manner permitted by the Act, or (iii) the entry of a decree of judicial dissolution under the Act.

     b.     The bankruptcy (as defined in the Act) of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the business of the Company shall continue without dissolution.

     c.     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in the Act.

19.     Waiver of Partition; Nature of Interest. Except as otherwise expressly provided in this Agreement, to the fullest extent permitted by applicable law, the Member hereby irrevocably waives any right or power that the Member might have to cause the Company or any of its assets to be partitioned, to cause the appointment of a receiver for all or any portion of the assets of the Company, to compel any sale of all or any portion of the assets of the Company pursuant to any applicable law or to file a complaint or to institute any Proceeding at law or in equity to cause the dissolution, liquidation, winding up or termination of the Company. The Member shall not have any interest in any specific assets of the Company, and the Member shall not have the status of a creditor with respect to any distribution pursuant to Section 11. The interest of the Member in the Company is personal property.

20.     Benefits of Agreement; No Third-Party Rights. None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member. Nothing in this Agreement shall be deemed to create any right in any Person (other than Indemnitee under Section 13) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person.

21.     Other Business. The Member may engage in or possess an interest in other business

NY - 7888100 00001 - 10397734 v3

ventures (unconnected with the Company) of every kind and description, independently or with others. The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

22.     Severability. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

23.     Amendments. This Agreement may be amended only in writing. Any such amendment must be approved and executed by the Member.

24.     Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Member and, to the extent permitted by this Agreement, its successors, legal representatives and assigns.

25.     Entire Agreement. This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

26.     Governing Law. This Agreement shall be governed by, and construed under, the laws of the State of Nevada, all rights and remedies being governed by said laws.

27.     Notices. Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail, or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in Section 3, (b) in the case of the Member, at its address as listed on Schedule B attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

[*Signature Page Follows*]

NPP - 788810 000001 - 10397734 v3

**IN WITNESS WHEREOF**, the undersigned has caused this Agreement to be executed as of the date first above written.

**VERDANTF AG**

By: _____

Name: Gaia Arnaboldi           Berry Polmann

Title: Managing Partner       Managing Partner

## SCHEDULE A

### DEFINITIONS

A. Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings

"**Act**" means Title 7, Chapter 86 of the Nevada Revised Statues, as amended from time to time.

"**Percentage Interest**" means, at any time for any member of the Company, the percentage interest of such member set forth on Schedule B, as the same may be amended from time to time in accordance with this Agreement. The combined Percentage Interest of all members of the Company shall at all times equal one hundred percent (100%). All adjustments to Percentage Interests calculated pursuant to the terms of this Agreement shall be calculated to the nearest one thousandth of a percent.

"**Person**" means any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint-stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

B. Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation". The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision. The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement. All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

\NV~788A00000001 - 187977734 v3

## SCHEDULE B

| Name | Mailing Address | Percentage Interest |
|------|-----------------|---------------------|
| Verdantf AG | Kobiboden 63<br>8840 Einsiedeln<br>Switzerland | 100% |

**SCHEDULE C**

**OFFICERS**

| Name | Title(s) |
| --- | --- |
| Berry Polmann | Vice President |
| Gaia Arnaboldi | Vice President |

NY – 7688/10/00001 – 10397734 v3