# EXHIBIT 25

# Convertible Loan Agreement

by and between

**Municipal Employee's Retirement System of Michigan (MERS),**

1134 Municipal Way, Lansing, MI 48917, USA (the "**Lender**")

(**Investor** or **Lender**)

and

**Concord Blue Energy Inc.**
12424 Wilshire Blvd. Ste 660
Los Angeles, California 90025
Phone: 310 979 2900

(**Borrower**)

## Preamble

A. WHEREAS the Investor will provide a Convertible shareholder loan of USD 4,800,000.00 to Borrower, out of the USD 10,000,000 convertible debt facility approved by the Board of Directors of the Borrower, for the purpose of helping Borrower during its fundraising process with JP Morgan Alternative Credit Syndicate, its insurance package process with Munich Re Green Tech Solutions, the EU Innovation Grant process with EY and the capital raising process with various investment banks, partnering with strategic investors such as Air Liquide et al and finalize its ESG certification process.

B. WHEREAS the usage of the convertible shareholder loan on the Group holding company requires Full Board of Directors approval before being transferred to each Group subsidiary requiring the funds, for investments or to cover working capital needs.

NOW, THEREFORE, the Investor and the Company enter into this Convertible shareholder loan agreement (the **Convertible Loan Agreement**):

**1.**        **Size of loan**

The Lender hereby grants to Borrower a loan in the amount of USD 4,800,000 (Four Million Eight Hundred Thousand United States Dollars) as a debt to the Borrower and as a credit of the Lender (the "Convertible Loan")

**2.**        **Currency and interest**

The Loan's currency is United States Dollars (USD) and shall bear interest at an annual rate of 9% for the first two calendar years. If Borrower has not repaid the Convertible Loan, or if the Convertible Loan has not been converted into shares of the borrower, after the second anniversary of the initial disbursement of the Convertible Loan, the annual interest rate will be reset to -Libor 12 month LIBOR- plus 400 basis points

**3.**        **Use of proceeds**

The Borrower shall apply the Loan amounts solely as directed by the Borrowers Board of Directors

**4.**        **Disbursement of Loan**

The Lender shall disburse the Convertible Loan amount to the Borrower's bank account:
Wells Fargo Bank, N.A. 420 Montgomery, San Francisco, CA 94104
Acct Name: Concord Blue Energy, Inc
Wells Fargo Account Number: 4634177240
SWIFT: WFBIUS6S,

on or before February 24th, 2023.

**5.**        **Duration and conversion**

The term of the Convertible Loan shall commence upon the receipt of the Convertible Loan amount by Borrower.

The Lender shall have the right to convert the full amount of the Convertible Loan and accrued interest into shares of equity of the Borrower ("Converted Shares"): (i) at any time in which a third party has agreed to subscribe shares of capital stock of the Borrower, or (ii) if at any time Lender demands payment of the Convertible Loan plus accrued interests and Borrower fails to make such payment on the date requested by Lender.

The value of each Converted Share in the case of (i) above, shall be a 25% discount to the share price subscribed by the new investor, or in the case (ii) above, shall be a 25% discount to the share price of the previous share issued by Borrower.

## 6. Repayment

The Convertible Loan and all interests accrued shall be due and payable by Borrower on the earlier of: (i) at any time after the second anniversary of the disbursement of the Convertible Loan, at the request by Lender on the 10th business day after receipt by Borrower of Lender's notice demanding payment; or,(ii) at any time prior to such date automatically and without requiring further notice from Investor, in case of a bankruptcy filing for Concord Blue Energy or any subsidiary whether such filing is made by Borrower, its shareholders or third party.

## 7. Security

The obligations of Borrower under this Convertible Loan Agreement shall be secured by (i) a security interest over the Single Engineering, Manufacturing & Operating License Agreement as outlined in the AGREEMENT AND OMNIBUS AMENDMENT dated as of March 8, 2016, to be granted and perfected on or before the date of borrowing, or (ii) to the extent possible under applicable law, an assignment of the Single Engineering, Manufacturing & Operating License Agreement in favor of MERS or a vehicle designated by MERS, for such purpose.

**8.**        **Miscellaneous**

**8.1.**      **Nature of Parties' Rights and Obligations**

Except as specifically provided otherwise in this Agreement, the rights and obligations of the Parties hereunder shall be several (and not joint).

**8.2.**      **Taxes, Costs and Expenses**

**8.2.1.**    **Taxes**

Any and all taxes and other public charges imposed on one of the Parties in connection with this Agreement and the transactions contemplated hereby are to be borne by the Party on which such tax or public charge is imposed.

**8.2.2.**    **Costs and Expenses**

Each Party shall bear the costs and expenses (including advisor fees) arising out of or incurred in connection with this Agreement and all transactions contemplated hereby.

**8.3.**      **Successors and Assigns**

This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective permitted successors and assigns.

**8.4.**      **Entire Agreement**

This Agreement, including any other documents referred to herein, constitutes the entire agreement and understanding among the Parties with respect to the subject matter hereof, and shall supersede all prior oral and written agreements or understandings of the Parties relating hereto.

**8.5.    Amendments**

This Agreement (including any amendment of this Section 8.5) may only be amended by all Parties in writing.

**8.6.    Assignment**

Borrower shall not be entitled to assign or transfer this Agreement or any of the rights or obligations hereunder to any third party without the prior written consent from the Lender.

**8.7.    Severability**

If any part or provision of this Agreement shall be held to be invalid or unenforceable, the other provisions of this Agreement shall nonetheless remain valid. In this case, the invalid or unenforceable provision shall be replaced (by court order, as the case may be) by a substitute provision that best reflects the intentions of the Parties without being unenforceable, and each Party shall execute all agreements and documents required in this connection. The same shall apply in case of any gap in this Agreement.

**9.    Governing Law and Jurisdiction**

**9.1.    Governing Law –**

This Agreement shall in all respects be governed by, and construed in accordance with, the substantive laws of the state of California, United States, to the exclusion of conflict of law principles.

**9.2.    Jurisdiction**

Any dispute arising out of or in connection with this Agreement shall exclusively be referred to the courts competent for the state of California, United States.

(THE NEXT PAGE IS THE SIGNATURE PAGE)

**Verdantf on behalf of Mers of Michigan**

Place, date Zurich, 23.2.2023        By: B. Polmann        By:  G. Arnaboldi

**Concord Blue Energy.**

Place, date   Dusseldorf 23.02.23        By:                By: